**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BARRY AHURUONYE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF INTERIOR, et al.,<br><br>Defendants. | ) | Civil Action No. 17-2061 (RBW) |

**MEMORANDUM OPINION**

The plaintiff, Barry Ahuruonye, proceeding pro se, brings this civil action against the defendants, the United States Department of Interior (the "Department") and Doug Burgum,[1] in his official capacity as Secretary of the Interior, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 791 et seq. See Plaintiff's Amended Complaint #2 ("2d Am. Compl.") at 3, ECF No. 47. Currently pending before the Court are the Plaintiff's Motion for Memorandum of Points and Authorities in Support of Plaintiff's Summary Judgment ("Pl.'s Mot."), ECF No. 72,[2] the Defendant's Motion for Judgment on the Pleadings or Alternatively, Summary Judgment ("Def.'s Mot."), ECF No. 75, the Plaintiff's Motion to Correct the Administrative Record ("Pl.'s Mot. to Correct"), ECF No. 86, and finally the Plaintiff's

[1] Doug Burgum is the current Secretary of the Interior, and he is therefore substituted for Deb Haaland as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] The Court notes that the plaintiff's motion for summary judgment, as well as his other motions, raise arguments regarding claims that are either irrelevant to the issues currently before the Court or that have already been dismissed by the Court. The Court will focus its analysis on the claims that remain pending in the plaintiff's Second Amended Complaint, which are his failure to accommodate claim under the Rehabilitation Act and his retaliation claim under Title VII.

Omnibus Motion for Terminating Sanctions and Default Judgment Pursuant to the Court's Inherent Powers and Fed. R. Civ. P. 56(h) ("Pl.'s Omnibus Mot."), ECF No. 90.[3] Upon careful consideration of the motions,[4] the Court concludes for the following reasons that it must deny the plaintiff's motions and grant summary judgment to the defendant.

## I. BACKGROUND

### A. Factual and Administrative Background

The Court generally outlined the factual background of this case in its earlier Memorandum Opinion issued on March 5, 2025, and, therefore, will not reiterate every fact contained in that opinion here. See Ahuruonye v. U.S. Dep't of Interior, No. 17-cv-2061 (RBW), 2025 WL 707576, at *1–2 (D.D.C. Mar. 5, 2025). The Court will, however, set forth in more detail the facts that remain pertinent to the resolution of the defendant's motion for judgment on the pleadings or alternatively summary judgement.

The plaintiff identifies himself as an African American male of Nigerian national origin, who in December 2011, was hired as a Grants Management Specialist, GS-1109-12, in the

---

[3] The plaintiff's Second Amended Complaint names both the Department and the Secretary of the Interior as defendants. See 2d Am. Compl. at 9. Because it is well-established that "[t]he only proper defendant in a Title VII suit . . . is the head of the department, agency, or unit in which the allegedly discriminatory acts transpired[,]" Hackley v. Roudebush, 520 F.2d 108, 115 n.17 (D.C. Cir. 1975) (internal quotation marks omitted), the Court must dismiss the plaintiff's Title VII claims against the Department itself. The same is true for claims brought under the Rehabilitation Act since the law "draws from the procedures of Title VII." Holloway v. Garland, No. 24-226 (BAH), 2025 WL 14137, at *7 (D.D.C. Jan. 1, 2025) (citing Paegle v. Dep't of the Interior, 813 F. Supp. 61, 64 n.2 (D.D.C. 1993)) (other citations omitted). Accordingly, the Court will refer to the Secretary of the Interior as the sole defendant throughout this Memorandum Opinion and Order.

[4] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Opposition to Plaintiff's Motion for Summary Judgment, ECF No. 87, (2) the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment/Judgment on the Pleadings and in Comprehensive Support of Plaintiff's Cross-Motion for Summary Judgment on Liability ("Pl.'s Reply"), ECF No. 88, (3) the Plaintiff's Notice of Defendant's Failure to Respond and Request to Treat Motion as Conceded, ECF No. 91, (4) the Defendant's Omnibus Response to Plaintiff's Motion for Terminating Sanctions and Reply in Support of Defendants' Motion for Summary Judgment ("Def.'s Reply"), ECF No. 92, (5) the Plaintiff's Reply Motion for Terminating Sanctions and Rebuttal to Defendants' Omnibus Response, ECF No. 94, and, (6) the Plaintiff's Notice of Supplemental Evidence in Support of Plaintiff's Reply Motion for Terminating Sanctions and Rebuttal to Defendant's Omnibus Response, ECF No. 95.

Department's United States Fish and Wildlife Service ("FWS"), until his termination in April 2015. See Appellant's Amended Complaint ("Am. Compl."), Exhibit ("Ex.") 2 (Ahuruonye v. Dep't of Interior, No. DC-0752-13-0384-C-1, at 1 (M.S.P.B. Mar. 28, 2014) ("MSPB 2014 Decision")), ECF No. 11-2; Ahuruonye v. U.S. Dep't of Interior, No. 16-cv-1767 (RBW), 2022 WL 1746656, at *1 (D.D.C. May 31, 2022) (Walton, J.) aff'd, No. 22-5239 (D.C. Cir. 24, 2023), cert. denied, 144 S. Ct. 1064 (2024). Relevant here, the plaintiff was initially "terminat[ed] from his term appointment [ ] to the position of Grants Management Specialist, . . . effective December 3, 2012 . . . ." MSPB 2014 Decision at 1.

Following the plaintiff's administrative appeal of the Department's termination of his employment, the parties entered into a settlement agreement on April 5, 2013, pursuant to which the defendant agreed to reinstate the plaintiff to his former position and pay him back pay and the benefits he would have accrued during the period when he was terminated, see id. at 2, but on June 20, 2013, the plaintiff filed a Petition for Enforcement with the Merit Systems Protection Board ("MSPB"), alleging that the Department had not complied with the terms of their settlement agreement, see Am. Compl. at 3. On March 28, 2014, the MSPB denied the plaintiff's petition for enforcement of the agreement after concluding that the Department "ha[d] established that it is in compliance with the April 5, 2013 Settlement Agreement." MSPB 2014 Decision at 8.

Separately, the plaintiff also pursued an administrative appeal, culminating in an appeal before the Equal Employment Opportunity Commission ("EEOC"), which affirmed the Department's final decision regarding his claims. See generally Trevor F. v. Zinke, EEOC Doc 0120150183, 2017 WL 3393856 (EEOC Jul. 28, 2017). The plaintiff has also filed several other lawsuits in this Court and other courts relating to his employment with the defendant, which the

Court consolidated and subsequently dismissed. See Ahuruonye, 2022 WL 1746656, at *1; see also Ahuruonye v. Dep't of Interior, No. 16-cv-1767 (RBW), 2024 WL 5041997, at *2–3 (D.D.C. Sept. 30, 2024), aff'd, No. 24-5229 (D.C. Cir. Jan. 31, 2025) (denying the plaintiff's motion to set aside and vacate its prior summary judgment order as void).

**B. Procedural Background**

The Court has already detailed much of the relevant procedural history of this long-running matter, and, therefore, will only briefly discuss the procedural posture of this case following the issuance of its earlier Memorandum Opinion.

On March 5, 2025, the Court granted in part and denied in part the plaintiff's motion to further amend his complaint over the defendant's objection and denied the defendant's then-pending motion to dismiss the Amended Complaint as moot. See Order at 1 (Mar. 5, 2025), ECF No. 43. Specifically, the Court granted the plaintiff's motion to further amend his complaint to the extent that it sought to amend the complaint to conform with the fourteen discrimination and retaliation claims he brought in his EEOC appeal, but denied his motion to the extent it sought to include discrimination claims based on his national origin and hostile work environment allegations. Id.

Then, on April 3, 2025, the Court granted the plaintiff's motion for leave to file his out-of-time Second Amended Complaint, see Order at 4 (Apr. 3, 2025), ECF No. 45, but denied the plaintiff's request that the Court reconsider in part its March 5, 2025, Order, insofar as it dismissed without prejudice his national origin and hostile work environment claims, see id. at 4–5. Rather than order the plaintiff to refile yet again his Second Amended Complaint, the Court "sua sponte dismiss[ed] without prejudice all counts against the defendant to the extent that the plaintiff seeks to bring claims of discrimination based on national origin and hostile

work environment, consistent with its prior Order denying the plaintiff leave to file these claims." Id. at 4.

On August 5, 2025, the defendant filed his motion to dismiss the plaintiff's Second Amended Complaint. See generally Motion to Dismiss and Memorandum in Support Thereof, ECF No. 50. On August 18, 2025, the plaintiff filed his opposition to the defendant's motion to dismiss, see generally the Plaintiff['s] Opposition to Defendant's Motion to Dismiss the Amended Complaint, ECF No. 51, and on September 4, 2025, the defendant filed his reply in further support of his motion to dismiss, see generally Reply in Further Support of Defendant's Motion to Dismiss, ECF No. 54.

On April 13, 2026, the Court granted in part and denied in part the defendant's motion to dismiss. See Order (Apr. 13, 2026), ECF No. 59. Specifically, the Court dismissed all of the plaintiff's claims except for:

> (1) the component of the plaintiff's Rehabilitation Act claim regarding Ms. Van Alstyne's request for medical documentation and subsequent alleged denial of his reasonable accommodation request on August 25, 2013; and (2) the component of the plaintiff's Title VII retaliation claim regarding Ms. Van Alstyne's alleged questioning about his EEO activity during his performance appraisal meeting.

Id. at 1–2.

The plaintiff then promptly filed a motion for reconsideration, see generally Plaintiff's Motion for Reconsideration ECF No. 60, which the Court denied, Order at 1 (Apr. 30, 2026), ECF No. 64. The plaintiff then decided to file a motion for summary judgment on May 29, 2026, without first proceeding with discovery. See generally Pl.'s Mot. The defendant filed his motion for a judgment on the pleadings or in the alternative a cross-motion for summary judgment on June 5, 2026. See generally Def.'s Mot. The plaintiff filed his combined opposition to the defendant's motion and his cross-motion for summary judgment on August 18,

2026. See generally Pl.'s Reply. The defendant filed his reply in support of his motion to dismiss and cross-motion for summary judgment on August 25, 2026. See generally Def.'s Reply. The plaintiff has also filed two additional motions with the Court. The first is a motion to correct the administrative record which the plaintiff filed "to correct a structural, typographical timeline distortion regarding the operational date of the reasonable accommodation denial under review, correcting it from August 25, 2013 to August 5, 2013" due allegedly to "Lisa Van Alsytne's active deception." Pl.'s Mot. to Correct at 1–2 (emphasis omitted from the first quotation). The second is a motion to "enter terminating sanction and a default judgment against the [d]efendant" due to the defendant's alleged "post-hoc record manipulation and a fatal timeline contradiction." Pl.'s Omnibus Mot. at 1 (emphasis omitted from the first quotation).

## II. STANDARDS OF REVIEW

### A. Federal Rule of Civil Procedure 12

Federal Rule of Civil Procedure 12(h)(2)(B) allows a defendant to seek dismissal of a complaint for failure to state a claim upon which relief can be granted through a Rule 12(c) motion after the pleadings are closed. See Brown v. McDonogh, No. 14-1457 (JMC), 2023 WL 3646933 at *4 (D.D.C. May 25, 2026). Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Because "judgment on the pleadings is rare[,]" Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp., 933 F.3d 751, 760 (D.C. Cir. 2019), and "provides judicial resolution at an early stage of a case, the party seeking judgment on the pleadings shoulders a heavy burden of justification[,]" id. Specifically, courts will only grant a party judgment on the pleadings "if the moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." Schuler v.

PricewaterhouseCoopers, LLP, 514 F.3d 1365, 1370 (D.C. Cir. 2008) (quoting Peters v. Nat'l R.R. Passenger Corp., 966 F.2d 1483, 1485 (D.C. Cir. 1992)).

In assessing whether the moving party has met its burden, the Court "will accept as true the allegations in the opponent's pleadings, and as false all controverted assertions of the movant." Liberty Mar. Corp., 933 F.3d at 760–761 (quoting Haynesworth v. Miller, 820 F.2d 1245, 1249 n.11 (D.C. Cir. 1987), abrogated on other grounds by Hartman v. Moore, 547 U.S. 250 (2006)). Moreover, the Court "must give 'all reasonable inferences to the opponent's pleadings' before entering a judgment on the pleadings." Id. at 761 (quoting Wager v. Pro, 575 F.2d 882, 884 (D.C. Cir. 1976)). And, in considering a motion under Rule 12(c), the Court may consider only the pleadings—which include "[any] copy of a written instrument that is an exhibit to a pleading[,]" Fed. R. Civ. P. 10(c), "such as relevant and authentic documents" submitted with the pleadings, Liberty Mar. Corp., 933 F.3d at 760—as well as judicially noticed facts. However, "[i]f, on a motion under . . . [Rule] 12(c), matters outside the pleadings are presented to and not excluded by the [C]ourt, the motion must be treated as one for summary judgment under Rule 56[,]" Fed. R. Civ. P. 12(d), and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion[,]" id.

**B. Federal Rule of Civil Procedure 56**

As with a motion under Rule 12(c), a court may grant a Rule 56 motion for summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment[.]" Id. The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, the non-moving party "must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position . . . [is] insufficient" to withstand a motion for summary judgment; rather, "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

### C. Pro Se Parties

In applying the above frameworks, the Court must be mindful of the fact that the plaintiff is proceeding in this matter pro se. This appreciation is required because the pleadings of pro se parties are "to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted). Furthermore, all factual

allegations by a pro se litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a dispositive motion. See Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999).

Nonetheless, a "pro se complaint, like any other, must present a claim upon which relief can be granted by the court." Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981). And "when faced with a motion for summary judgment," a pro se litigant "must comply with the Federal Rules of Civil Procedure and this Court's local rules ... regarding responding to statements of material fact and marshalling record evidence that establishes each element of his claim for relief[.]" Hedrick v. Fed. Bureau of Investigation, 216 F. Supp. 3d 84, 93 (D.D.C. 2016) (citations omitted); see McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); see also General Order for Civil Cases Before the Honorable Reggie B. Walton (Aug. 9, 2023), ECF No. 10 (explaining the plaintiff's obligations in responding to a motion for summary judgment). Relevant here, "[a]lthough [a pro se party's] pleadings are read liberally, the same summary judgment standard applies, notwithstanding [his] pro se status." Parr v. Ebrahimian, 70 F. Supp. 3d 123, 127 n.2 (D.D.C. 2014) (citing Cunningham v. U.S. Dep't of Just., 40 F. Supp. 3d 71, 81 (D.D.C. 2014)).

## III. ANALYSIS

### A. Plaintiff's Reasonable Accommodation Claim

The Court first begins its analysis with the plaintiff's allegation that "on August 25,[5] 2013, his supervisor denied his reasonable accommodation request for a second time . . . ." 2d.

[5] In his motion to correct the administrative record, the plaintiff contends that "the Certified Administrative Record, internal database metadata and a forensic network audit [demonstrate] the true operational denial occurred on the morning of August 5, 2013, when Supervisor Lisa Van Alstyne executed a final database denial entry on Form DI-

(continued . . .)

Am. Compl. at 44. Specifically, he requested to work "two days a week [] teleworking (Monday and Tuesdays) as a reasonable accommodation as [he] suffer[s] from work related syncope that leads to fainting episodes . . . as well as outbreak of hives." Id. at 15. The plaintiff alleges that[6] his supervisor Lisa Van Alstyne, "asked for medical documentation and reviewed the documentation herself" and then allegedly "denied [the plaintiff's] request, using various conflicting reasons . . . ." Id. at 14. The plaintiff then claims that in December of 2013, his new supervisor, Penny L. Bartnicki, approved his accommodation to telework two days a week. Am. Compl., Ex. 5, ECF No. 11-5.

In response, the Department argues that "[t]he interactive process for [the p]laintiff's reasonable accommodation did not end[—]as [the p]laintiff alleges[—]in August[,]" and under the Rehabilitation Act "an employer is not required to provide an employee that accommodation he requests or prefers; the employer need only provide some reasonable accommodation." Def.'s Mot at 8 (second quotation citing Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1305 (D.C. Cir. 1998)). According to the Department, "[a] mere short-term delay in the provision of a requested reasonable accommodation does not on its own constitute failure to accommodate." Id. at 9 (citing Mogenhan v. Napolitano, 613 F.3d 1162, 1168 (D.C. Cir. 2010); Weatherspoon v. Azar, 380 F. Supp. 3d 65, 72 (D.D.C. 2019)). And further, the defendant contends that he "acted in good faith throughout the interactive process and that the August 2013 offer [was] for a

---

(. . . continued)
6512" in asserting that he was "denied" an accommodation on August 25th instead of August 5th, 2013. Pl.'s Mot. to Correct at 1. While the plaintiff claims the defendant asserts an August 25th, 2013 "denial" date, the record demonstrates that this letter was actually sent on August 22nd, 2013, which is the date identified by the defendant. Def.'s Mot., Ex. B, ECF No. 75-3; Def.'s Mot. at 3. However, the plaintiff provides no factual basis for his assertion and the plaintiff's support for this claim is to a nonexistent exhibit that does not appear on the Court's docket. Pl.'s Mot. to Correct at 1 ("ECF No.1, Ex. 2, p. 227"). Further, whether this communication occurred on August 5th or 22nd has no bearing on the Court's decision that summary judgment must granted to the defendant. Thus, the plaintiff's motion to correct the administrative record is denied.

[6] In his Second Amended Complaint, the plaintiff appears to mistakenly allege that this action occurred in 2012 instead of 2013. Id. at 14.

different reasonable accommodation than what [the p]laintiff requested [and thus] did not end the [interactive] process." Id. at 10.

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination" by a federal agency. 29 U.S.C. § 794(a). To state a claim of disability discrimination under the Rehabilitation Act, the plaintiff must allege that "(1) [he] was a qualified individual with a disability[;] (2) [his] employer knew of [his] disability[;] and (3) [he] suffered an adverse employment action because of [his] disability." Congress v. District of Columbia, 324 F. Supp. 3d 164, 175 (D.D.C. 2018). An adverse employment action is one that causes "some harm." Muldrow v. City of St. Louis, 601 U.S. 346, 354–355 (2024); see Castiglione v. Bunch, No. 23-cv-2274 (LLA), 2025 WL 843280, at *8 (D.D.C. Mar. 18, 2025) (noting that "courts in this Circuit have 'long interpreted' Title VII and the Rehabilitation Act in parallel") (citing Bain v. Off. of Att'y Gen., 648 F. Supp. 3d 19, 51 (D.D.C. 2022)).

Additionally, the Rehabilitation Act, which incorporates the standards of the Americans with Disabilities Act ("ADA"), requires employers to make reasonable accommodations "to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship[.]" 42 U.S.C. § 12112(b)(5)(A); see Minter v. District of Columbia, 809 F.3d 66, 69 (D.C. Cir. 2015) (applying ADA standards to a claim under the Rehabilitation Act). To establish a failure to accommodate prima facie case, a plaintiff must show that

> (1) . . . he . . . was an individual who had a disability within the meaning of the [Rehabilitation Act]; (2) . . . the employer had notice of the disability; (3) . . . with [a] reasonable accommodation the employee could perform the essential functions of the position; and (4) . . . the employer refused to make such accommodations.

Buie v. Berrien, 85 F. Supp. 3d 161, 171–72 (D.D.C. 2015) (quoting Brown v. Snow, 407 F.

Supp. 2d 61, 67 (D.D.C. 2005)). As noted by the defendant, "[a]n employer is not required to provide an employee th[e] accommodation he requests or prefers, the employer need only provide some reasonable accommodation." Wash. Hosp. Ctr., 156 F.3d at 1305 (quoting Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996)). "The employee has the burden of identifying reasonable accommodations, and the [employer] has the burden of showing undue hardship." Graffius v. Shinseki, 672 F. Supp. 2d 119, 126 (D.D.C. 2009) (citing Chinchillo v. Powell, 236 F. Supp. 2d 18, 23–24 (D.D.C. 2003)).

In its April 13, 2026 Memorandum Opinion, the Court declined to dismiss the plaintiff's claim that he was denied a reasonable accommodation on August 22, 2013, because it found that

> based on the current record, it at least appears that the plaintiff's initial request for a reasonable telework accommodation was denied by Ms. Van Alstyne and that an identical request based on the same medical documentation was subsequently approved by a different supervisor several months later[,]" and thus it would be premature for the Court to dismiss the plaintiff's failure to accommodate claim.

Memorandum Opinion (Apr. 13, 2026) ("Apr. 13, 2026 Mem. Op.") at 21, ECF No. 58.

Upon review of the record in this case in the light most favorable to the plaintiff, and in particular the exhibits attached to the defendant's motion for summary judgment, the Court agrees with the defendant that no reasonable factfinder could find that the plaintiff was denied a reasonable accommodation as required under the Rehabilitation Act.[7] First, the Court finds that the defendant was not denied a reasonable accommodation on August 22, 2026.[8] For purposes

---

[7] Because the Court relies on documents outside of the plaintiff's pleadings in reaching its decision regarding the plaintiff's only remaining Rehabilitation Act claim, the Court evaluates the defendant's motion regarding this claim using the summary judgment standard of review and not the Rule 12(c) judgment on the pleadings standard advocated for by the defendant.

[8] The Court focuses its analysis solely on the last element required for a plaintiff to demonstrate a prima facie case for failure to accommodate, assuming arguendo that the plaintiff has satisfied the first three elements. While the Court in it's previous Memorandum Opinion held that "it at least appears that the plaintiff's initial request for a reasonable telework accommodation was denied by Ms. Van Alstyne and that an identical request based on the same medical documentation was subsequently approved by a different supervisor several months later[,]" Apr. 13, 2026

(continued . . .)

of the Rehabilitation Act, a denial occurs when the employer has "ended the interactive process or . . . participated in the process in bad faith." Ward v. McDonald, 762 F.3d 24, 32 (D.C. Cir. 2014).[9]

Here, Ms. Van Alstyne on August 5, 2013, initially stated to the plaintiff that "[t]he medical documentation [the plaintiff] provided on July 23, 2013 was not sufficient" and requested that the plaintiff's physician "provide current documentation" regarding medical evidence in support of the plaintiff's disability. Def.'s Mot., Ex. F at 1, ECF No. 75-7.[10] On August 22, 2026, Ms. Van Alstyne stated that it was her understanding from the plaintiff's communications that his doctor "[would] not be giving [the Department] any information other than that given in his letter dated May 23, 2013[,]" and provided the plaintiff with an alternative accommodation by offering to relocate him to a different work station and providing the plaintiff with flexibility on the days when he had doctor's appointments. Def.'s Mot., Ex. B at 2–3, ECF No. 75-3. Additionally, Ms. Van Alstyne told the plaintiff that "[a]s part of the continued interactive process, please let me know if you encounter any adverse conditions so that they may

(. . . continued)
Mem. Op. at 21, the defendant's statement of material facts and accompanying exhibits clearly demonstrate to the Court that this denial was not a permanent decision and that the Department continued to communicate with the plaintiff in an attempt to accommodate his medical conditions, see Def.'s Mot., Ex. A, ECF No. 75-2.

[9] The plaintiff argues that the Department "explicitly certified to this Court that [his] supervisor's electronic communication directly 'related to the challenged action' and explicitly 'explain[ed] [the p]laintiff's manager's decision to initially deny [the p]laintiff's request to telework'" and thus "these explicit strategic statements constitute binding judicial admissions that permanently withdraw the fact of the denial from contention." Pl.'s Mot. at 1–2 (citing defendant's Reply in Further Support of Defendant's Motion to Dismiss at 3, ECF N. 54) (emphasis omitted from the first quotation). However, the Department's initial "denial" of the plaintiff's preferred accommodation does not imply that the plaintiff was denied a reasonable accommodation as required under the Rehabilitation Act as "an employer is not required to provide an employee th[e] accommodation he requests or prefers, the employer need only provide some reasonable accommodation." Wash. Hosp. Ctr., 156 F.3d at 1305.

[10] As discussed in footnote 5, although the plaintiff objects to the authenticity of Exhibit F to the defendant's motion for summary judgment, the plaintiff has provided no factual basis for the Court to doubt its authenticity. See supra n.5.

be considered and addressed."[11] Id. at 3. After the plaintiff denied this alternative accommodation, Def.'s Mot., Ex. C, ECF No. 75-4, Ms. Van Alstyne sent the plaintiff another letter stating

> "[t]he reasonable accommodation of telework was denied because you are new to your work assignment and the work includes extensive use of a new electronic reporting system. You are still learning your work responsibilities and the Wildlife Tracking and Reporting Actions for the Conservation of Species (Wildlife TRACS) system. Reasonable accommodation is an iterative process that we should return to discuss periodically. Therefore, we may consider telework at a future time, based on the essential functions of your job."

Def.'s Mot., Ex. D at 1, ECF No. 75-5. Ms. Van Alstyne then indicated to the plaintiff that she planned to meet with him on October 31, 2013, "to further discuss [his] reasonable accommodation request as part of the iterative process." Id. On September 11, 2013, the plaintiff's supervisor changed from Ms. Van Alstyne to Ms. Bartnicki. Def.'s Mot., Ex. G, ECF No. 75-8. On December 26, 2013, Ms. Bartnicki sent a letter to the plaintiff granting his accommodation request to telework two days per week. Am. Compl., Ex. 5, ECF No. 11-5.

Upon close review of the record, the Court agrees with the defendant that the Department "continued the interactive process after [the p]laintiff rejected the initial accommodation in August 2013 and that [the p]laintiff was then granted the reasonable accommodation in December 2013." Def.'s Mot. at 11. It is clear from the facts of this case that the defendant never foreclosed the idea of the plaintiff teleworking, but instead was in constant communication both before and after providing the plaintiff with an alternative accommodation. And while the defendant did not grant the plaintiff's alternative accommodation in the first instant, "the process contemplated is 'a flexible give-and-take' between employer and employee 'so that together they

---

[11] The plaintiff alleges that the August 22, 2013, initial denial was "a final administrative boundary line that divested Ms. Van Alstyne of localized supervisory authority and stripped her of all ongoing jurisdiction over the accommodation file. She possessed zero systemic privileges to continue a valid interactive process." Pl.'s Reply at 21. However, there are simply no facts in the record to support this conclusory allegation by the plaintiff.

can determine what accommodation would enable the employee to continue working.'" Ward, 762 F. 3d at 32 (quotation marks omitted). The defendant made a reasonable request for the plaintiff to provide further medical documentation in support of his accommodation request and engaged with the plaintiff on multiple occasions to ensure that any concerns that the plaintiff had regarding his disability were properly brought to the attention of his supervisor. If anything, it is the plaintiff who failed to engage in the interactive process. See Def.'s Mot., Ex. B, ECF No. 75-3 (demonstrating that the plaintiff failed to provide further medical information in support of his accommodation request and failed to meaningfully engage with Ms. Van Alstyne regarding her proposed alternative accommodation).

The plaintiff appears to allege that Ms. Van Alstyne's decision not to grant him his accommodation request in August of 2013 was unlawful because "[m]onths later, successive Supervisor Penny Bartnicki, reviewed the same exact foundational medical packet and unconditionally granted the requested telework accommodation effective December 30, 2013." Pl.'s Mot. at 10. However, the plaintiff fails to indicate in his motion the fact that medical considerations are only one of the factors that his supervisors considered in making the decision as to whether he could telework two days per week. See Am. Compl., Ex. 5, ECF 11-5 (noting other relevant factors including the relevant needs of the office and the essential functions of a requestor's job amongst the seven total factors).[12] The plaintiff also insinuates that Ms. Van Alstyne granted his accommodation to work from home but subsequently revoked it for "shifting, inconsistent management considerations." Pl.'s Mot. at 24. However, the plaintiff neglects the fact that Ms. Van Alstyne on June 10, 2013, initially granted the plaintiff one day of

[12] These factors also accord with the requirement that the plaintiff demonstrate that "with [a] reasonable accommodation[,] the employee could perform the essential functions of the position" in order to establish a prima facie showing for a failure to accommodate claim. Buie, 85 F. Supp. 3d at 171–172.

telework on a probationary basis "dependent on workload and [the plaintiff's] ability to complete assignments remotely[,]" with "[t]he end date for this telework agreement [occurring on] September 30, 2013, [subject to a] review for renewal at the end of the fiscal year when [his] performance [was] review[ed]." Am. Compl., Ex. 9 (Errata Adding Exhibits 1-9 to the Plaintiff's First Amended Complaint) at 10, ECF No. 22-9.

Additionally, the plaintiff cannot show the delay in the Department granting his preferred accommodation was "a 'long-delayed accommodation [which] could be considered' unreasonable and hence 'actionable under the ADA.'" Mogenhan, 613 F.3d at 1168 (quoting Equal Emp. Opportunity Comm'n v. Sears, Roebuck & Co., 417 F.3d 789, 805 (7th Cir. 2005). That is because a delay of approximately four months is not sufficient to be considered unreasonable. See Buie, 85 F. Supp. 3d at 175–176 (holding that a seven-month delay is not unreasonable); see also Tobey v. U.S. Gen. Servs. Admin., 480 F. Supp. 3d 155, 170 (holding that "[a] delay of four to six months . . . is not unreasonable") (citation omitted); Spector v. District of Columbia, No. 17-cv-01884 (CJN), 2020 WL 977983, at *6 (D.D.C. Feb. 28, 2026) (holding that a seven-month delay is not unreasonable). Therefore, the Court concludes that summary judgment must be entered for the defendant on the plaintiff's failure to accommodate claim under the Rehabilitation Act.

### B. Plaintiff's Retaliation Claim

Next, the Court addresses the plaintiff's allegation that Ms. Van Alstyne unlawfully "questioned him about his [ ] EEO complaint during a performance appraisal plan meeting[,]" which he contends constituted interference with the EEO process in violation of Title VII. 2d Am. Compl. at 46. Specifically, the plaintiff alleges that during that meeting, "Ms. Van Alstyne questioned him about his harassment and discrimination complaint, asked him why he was

complaining about harassment, and asked him to sign his [Employee Performance Appraisal Plan] [("EPAP")][,]" id., which the plaintiff refused to do because "he felt he was under duress from her[,]" id. In its April 13, 2026 Memorandum Opinion, the Court concluded that it was "plausible that Ms. Van Alstyne's questioning of the plaintiff about 'why he was complaining about harassment' during a meeting about his performance expectations might 'discourage an employee . . . from bringing [EEO] discrimination charges' that he otherwise would bring." Apr. 13, 2026 Mem. Op. at 36 (citing 2d Am. Compl. at 46; Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 70–71 (2006)).

The defendant argues that "[m]ere questioning of EEO activity cannot give rise to a retaliation claim[,]" as there is "mixed caselaw on the question of whether an employee can even bring a claim of retaliation based on interference with the processing of an EEO complaint." Def.'s Mot. at 12. However, the Court in its previous Memorandum Opinion already concluded that "in light of Burlington Northern, [a] plaintiff[] [is] not categorically barred from pleading a retaliation claim based on interference with the EEO process." Apr. 13, 2026 Mem. Op. at 36 (quoting Harrigan v. Carson, No. 17-cv-930 (TJK), 2019 WL 4737119, at *4 (D.D.C. Sept. 28, 2019)). In response, the defendant argues that "those cases supporting EEO violations suggest significantly more interference than a question in a single meeting." Def.'s Mot. at 12. Specifically, the defendant argues that "[the p]laintiff must allege sufficient actions to suggest a 'reasonable employee [may] refrain from engaging the EEO-complaint process out of a concern that a supervisor's interference with the EEO process would render her efforts futile.'" Id. at 13 (quoting Lawson v. Sessions, 271 F. Supp. 3d 119, 141 (D.D.C. 2017)).

Under Title VII's anti-retaliation provision, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the

employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing[.]" 42 U.S.C. § 2000e-3(a). "The anti-retaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms[,]" Burlington N., 548 U.S. at 68 (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997)), and "protects an individual not from all retaliation, but from retaliation that produce[d] an injury or harm[,]" id. at 67. To establish a claim for retaliation under Title VII, a plaintiff must show: "(1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009). And, "the plaintiff bears the burden of establishing that the [defendant's] improper motive 'was the "but-for" cause of the employer's adverse decision.'" Green v. Haaland, No. 21-cv-329 (RDM), 2022 WL 898864, at *9 (D.D.C. Mar. 28, 2022) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009)). "In the retaliation context, an adverse action is one that is 'harmful to the point that [the employer's action] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Harris v. Mayorkas, No. 21-cv-1083 (GMH), 2022 WL 3452316, at *11 (D.D.C. Aug. 18, 2022) (quoting Burlington N., 548 U.S. at 57). And, "[t]he elements of retaliation . . . claims are the same under Title VII and the Rehabilitation Act." Doak v. Johnson, 19 F. Supp. 3d 259, 280 (D.D.C. 2014), aff'd, Doak v. Johnson, 798 F.3d 1096 (D.C. Cir. 2015).

The plaintiff in his papers, does not provide any additional facts to support the conclusion "that Ms. Van Alstyne's questioning of the plaintiff about 'why he was complaining about harassment' during a meeting about his performance expectations, [discouraged him] from bringing [an EEO] discrimination charge[]' that he otherwise would bring." Apr. 13, 2026 Mem.

Op at 36 (citing 2d Am. Compl. at 46; Burlington N., 548 U.S. at 70–71) (citation modified). Instead, the plaintiff continues to allege that Ms. Van Alstyne's questioning of his EEO complaint "was an interrogation [that] was the beginning not the sum total, of the episodes that culminated in a September 5, 2013, memorandum that unlawfully stripped [the p]laintiff of his reasonable official EEO time."[13] Pl.'s Mot. at 2 (quotation marks and citations omitted); see also Pl.'s Reply at 58 ("The June 25, 2013 interrogation did not occur in a vacuum; it was part of an unbroken pattern of face-to-face workspace intimidation. The record establishes that Supervisor Van Alstyne's hostility toward the EEO process was immediate, aggressive, and direct."). This allegedly included actions by the defendant such as "coordinated efforts to strip an employee of official EEO time, weaponize performance reviews, and bypass mandatory agency handbooks within 24 hours of a protected complaint[, which the plaintiff contends] constitute[d] severe adverse actions that would easily dissuade a reasonable worker from asserting their civil rights." Id. at 2.

However, the plaintiff seemingly fails to appreciate that the Court already dismissed these claims and rejected these allegations in its previous Memorandum Opinion, and instead what the plaintiff needed to demonstrate in order for him to succeed on this claim is how Ms. Van Alstyne's questioning of his EEO complaint discouraged or had the potential to discourage him from bringing an EEO complaint. And, despite voluminous briefing, he has failed to do so. Instead, the plaintiff continues to assert conclusory allegations without any factual basis as support. See, e.g., Pl.'s Reply at 15–16 ("Under Title VII, a supervisor is strictly prohibited from converting a mandatory workplace evaluation into a hostile investigative forum designed to

---

[13] The plaintiff mistakenly claims that the defendant has conceded this claim, when in fact the defendant has not done so. See Reply in Further Support of Defendant's Motion to Dismiss at 15, ECF No. 54 ("Plaintiff responds by framing this claim as a hostile work environment claim, stating that the alleged interference 'was the beginning, not the sum total, of the episodes that culminated in a' September 5, 2013, memorandum.").

challenge or neutralize an employee's protected activity. By explicitly linking a workplace review to an inquiry into active EEO complaints, the Supervisor provided direct, unassailable proof of an unlawful retaliatory focus.") (emphasis omitted).

Therefore, while the Court believes that Ms. Van Alstyne's questioning of the plaintiff's EEO complaint was inappropriate and could give rise to a Title VII retaliation claim if the facts demonstrated that the plaintiff was sufficiently discouraged from bringing an EEO complaint, here, the plaintiff has presented no facts to demonstrate that this occurred. As the defendant notes, the "cases supporting EEO violations suggest significantly more interference than a question in a single meeting." Def.'s Mot. at 12 (citations omitted). For example, in Lawson, it was alleged that the defendant in that case improperly processed the EEO complaint, approved an incomplete investigation of the complaint, approved the omission of any investigation of the plaintiff's claims of retaliation, and it was also alleged that the plaintiff's supervisor in Lawson appeared in the office tasked with handling the plaintiff's complaint. Lawson, 271 F. Supp. 3d at 139–140 (citation omitted). Here, the plaintiff simply has provided no additional facts to show that he was reasonably discouraged from bringing his EEO claim, solely on the basis of Ms. Van Alstyne's questions.

Further, although the plaintiff alleges that Ms. Van Alstyne's question was "under intimidation [and] coercion . . .[,]" as this Circuit has held "subjective injuries, such as dissatisfaction with a reassignment, or public humiliation or loss of reputation, are not adverse actions" for purposes of a Title VII claim. Forkkio v. Powell, 306 F.3d 1127, 1130–1131 (D.C. Cir. 2002) (citations omitted). Instead, the plaintiff needed to demonstrate that he "experience[ed] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find

objectively tangible harm[,]" which he simply has not done here. Id. at 305 (citing Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999). Accordingly, summary judgment must be granted to the defendant on the plaintiff's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiff's motion for summary judgment must be denied and the defendant's cross-motion for summary judgment must be granted. The Court also concludes that the plaintiff's motion to correct the administrative record and his omnibus motion for terminating sanctions and default judgment must also be denied.[14]

**SO ORDERED** this 18th day of November, 2026.[15]

REGGIE B. WALTON
United States District Judge

[14] The basis for the plaintiff's motion for terminating sanctions and for the issuance of a default judgment appears to be based on his position that "[the d]efendant'[s] entire summary judgment motion is built upon a contaminated administrative record." Pl.'s Omnibus Mot. at 1. However, as explained in this Opinion, the plaintiff's position is not correct. Further the plaintiff provides no factual basis for the Court to conclude that the defendant has engaged in "post-hoc record manipulation[,]" id., and therefore, the Court will also deny the plaintiff's motion.

[15] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.